UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. |
| ) | 7:18-cr-00020-KKC-MAS-2 |
| v. ) | and |
| ) | Civil Action No. |
| JONATHAN EDWARD MANIGAULT, ) | 7:22-cv-00086-KKC-MAS |
| ) | |
| Defendant/Movant. ) | |
| ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Jonathan Edward Manigault's ("Manigault") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Manigault, on several grounds, alleges his counsel was ineffective. [DE 146]. The United States responded in opposition, [DE 157], while Manigault replied in further support. [DE 159]. After thoroughly reviewing the record in its entirety, the Court recommends Manigault's motion be denied for the reasons stated below.

**I.     RELEVANT FACTUAL BACKGROUND**

Manigault was originally indicted in October 2018 followed by a Superseding Indictment on June 27, 2019. Per the Superseding Indictment, Manigault was charged with three counts: (a) Count 1, alleging that Manigault and co-defendant Christina Brook Mitchell ("Mitchell") persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing child sexual abuse materials in violation of 18 U.S.C. § 2251(a); and (b) Counts 3 and 6, alleging that Manigault knowingly received child sexual abuse materials in violation of 18 U.S.C. § 2252(a)(2). [DE 41].

The plea agreement generally summarizes the facts at issue.

> In or about June of 2018, in Pike County, the Defendant directed Christina B. Mitchell to take specific photographs of Victim 1, a 3 year old female, engaged in sexually explicit conduct. Specifically, the Defendant sent Mitchell a Facebook Messenger message stating, "walk in with your phone first . . . turn the camera so I can see you take her panties off . . . get pictures please . . . ok." Mitchell responded to the Defendant's instructions with photographs of Victim 1 on her knees and Mitchell spreading apart Victim 1's buttocks and vagina for purposes of the photographs. Mitchell transmitted the photographs from Pike County to the Defendant via the internet and specifically the Facebook Messenger application. Upon viewing the transmitted photographs of Victim 1 the Defendant wrote, "I wanna rub my dick on her." The Defendant then had video chat sex with Mitchell. The Defendant had Mitchell agree to photograph additional underage victims whom Mitchell had access to.
>
> The Defendant clearly articulated the type of photographs he wanted Mitchell to provide and their purpose.

[DE 55, Page ID# 152]. The plea agreement goes on to provide an example of a conversation between Manigault and Mitchell in which Manigault described the photograph he wanted Mitchell to take. [*Id*. at Page ID# 152-53].

Per the plea agreement and following a thorough colloquy from the Court, Manigault pleaded guilty to Counts 1 and 3. [DE 54]. He was sentenced to 480 months' imprisonment, [DE 116], following a contested sentencing hearing [DE 129].

Manigault next appealed the matter to the Sixth Circuit, [DE 117], but to no avail. The Sixth Circuit held that Manigault entered a knowing and voluntary plea and affirmed the Court's sentence and judgment. [DE 133].

## II.   ANALYSIS

In his petition, Manigault asserts three claims of ineffective assistance of counsel against his trial counsel, Hon. Michael B. Fox ("Fox"): (1) Fox incorrectly instructed him there were no viable defenses for Manigault as to Count 1 (production charge); (2) Fox coerced him to plead

guilty; and (3) Fox failed to zealously represent him at sentencing. The Court will address each of these arguments in turn below.

**A.   LEGAL FRAMEWORK**

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

One class of alleged constitutional error is ineffective assistance of counsel ("IAC") in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs IAC claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id.* at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. "Judicial scrutiny of counsel's

3

performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id*. at 695. To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id*. at 730; *Strickland*, 466 U.S. at 697.

B.  DEFENSES TO THE PRODUCTION CHARGE

In his petition, Manigault argues that counsel failed to raise valid and meritorious defenses to the production charge. [DE 146, Page ID# 679-84]. Specifically, Manigault argues that he had valid defenses because he was not the person taking the actual photographs, did not coerce Mitchell to take the photographs, and did not coerce Mitchell to produce the images. Stated another way, without ever once referencing the actions or omissions of his counsel, Manigault is attempting to argue that there was insufficient evidence to support his conviction. In support, Manigault cites to comments made by the Court during the sentencing of Mitchell where the Court stated Mitchell neither committed these acts "under duress or without any choice" nor "was [she] threatened." [DE 146, Page ID# 681 (quoting DE 87)].

The United States responded, pointing out several facts and admissions of Manigault in the record that undercut his argument at every turn. The Court, after reviewing the entirety of the record, agrees with the United States.

First, Manigault argues that because he did not take the images himself (he was not in Kentucky), he cannot be convicted. Manigault does not cite a single case or legal argument to support the notion that he had to be the person to take the images to be convicted under 18 U.S.C. 2251(a). That is because no such case or legal theory exists. A plain reading of the statute establishes that a person who assists in the creation and production of child sexual abuse materials is criminally liable even if they did not capture the images.

Second, the record is replete with evidence that Manigault coerced Mitchell into taking the images. The United States provided a clear example in Manigault's plea agreement:

> Specifically, the Defendant sent Mitchell a Facebook Messenger message stating, "walk in with your phone first . . . turn the camera so I can see you take her panties off . . . get pictures please . . . ok." Mitchell responded to the Defendant's instructions with photographs of Victim 1 on her knees and Mitchell spreading apart Victim 1's buttocks and vagina for purposes of the photographs.

[DE 55, Page ID# 152]. Per the Presentencing Investigation Report ("PIR"), Mitchell stated that she "transmitted the images of Victim 1 to Manigault for his review, as he could determine if the child had been 'messed with.'" [DE 118, Page ID# 459]. Stated differently, after Manigault directed Mitchell what types of photos to take of Victim 1, Mitchell then sent them to Manigault for his approval.

The plea agreement also included another exchange between Mitchell and Manigault in which the latter described the type of photographs he wanted Mitchell to provide and their purpose:

> MITCHELL states that she loves MANIGAULT [the Defendant] on June 3, 2018.
>
> MANIGAULT: "Even tho I'm a pervert."
>
> MITCHELL: "Yes"
>
> MANIGAULT: "Even tho I like young pussy"
>
> MITCHELL: "Yes"
>
> MANIGAULT: "Even tho I rape bitches"

5

>MITCHELL: "Yes"
>
>MANIGAULT: "Even tho I hump [the victims]"
>
>MITCHELL: "They don't see the you that I see. They don't know the you that I know."
>
>MANIGAULT: "And cum"
>
>MITCHELL: "Yes. I love everything about you."
>
>MANIGAULT: "Even [Victim 1]?" . . . "Even tho I'm teaching [the victim] how to please a black dick?"
>
>MITCHELL: "Yes"
>
>MANIGAULT: "Until you caught me with my dick with one of [the victims]" . . . "You let me get young pussy" . . . . "Does it bother you that [the victims] get me off?"
>
>MTICHELL: "A little but I know it's part of life"

[*Id*. at Page ID# 152-53].

As such, there is certainly sufficient evidence in the record that would suggest Mitchell captured the images at Manigault's direction and coercion.

Third, and the focus of Manigault in this initial IAC claim, is the United States did not have sufficient proof to establish that Manigault produced the images. The Court construes this argument to assert that while Manigault may have persuaded Mitchell to take the child sexual abuse materials, he did not instruct her to produce those images to others as she indisputably did. The Court finds this argument equally specious. Consequently, Manigault acknowledges that he aided and abetted Mitchell in the production actions but did not actually take up the act of production itself. This argument, by its very nature, is self-defeating. 18 U.S.C. § 2 states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission," or "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a

6

principal." 18 U.S.C. § 2(a) & (b). Aiding and abetting has been described as an alternate theory of liability as opposed to a substantive offense. An indictment need not even charge a § 2 violation to support a jury verdict based upon a finding of aiding and abetting. Rather, § 2 is embodied in every federal indictment for a substantive offense, whether set forth explicitly or implicitly. *See United States v. Taniguchi*, Nos. 00–4495, 49 F. App'x 506, 520 (6th Cir. 2002); *United States v. Camacho*, 233 F.3d 1308, 1315 (11th Cir. 2000); *United States v. Hill*, 55 F.3d 1197, 1204 (6th Cir. 1995); *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990); *United States v. Maselli*, 534 F.2d 1197, 1200 (6th Cir. 1976). "In keeping with the provisions of § 2, it has long been held that an indictment need not specifically charge 'aiding and abetting' or 'causing' the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either." *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966). Thus, "[a]ll indictments must be read in effect, then, as if the alternatives provided by 18 U.S.C. § 2 were embodied in each count thereof." *Id*. "The difference between causing and aiding and abetting alone . . . does not prevent either or both theories from being implied in an indictment." *Armstrong*, 909 F.2d at 1242. By Manigault's own admissions (both in his petition and throughout the record) there was certainly sufficient evidence to support a conviction for aiding and abetting related to the production charge. The Court finds this third argument unpersuasive.

In the end, all these arguments turn on the notion that Fox should have raised these defenses on Manigault's behalf. As the Court has established, none of these arguments withstand scrutiny. Moreover, Fox's decision to raise or not raise these defenses is a strategic choice. "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980). Proving prejudice under

7

*Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Mere speculation that an alternative strategy would have altered the judicial outcome is not sufficient. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) ("Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*."). Here, Manigault argues that Fox should have asserted defenses to the production that, while surely unsuccessful, may have resulted in some better outcome for him that remains undefined (i.e., from acquittal to a lesser sentence). Such an argument is merely speculative, as there is no support for the proposition that Fox's presenting unsuccessful defenses would have resulted in a more favorable outcome.

The Court finds these arguments fall short of the standards set forth in *Strickland*. It thus recommends denial of the petition with respect to these arguments.

C. **COERCION OF GUILTY PLEA**

Manigault's second argument is that his guilty plea was coerced by Fox. Namely, Fox allegedly told Manigault that he could "get life in prison if he did not accept this offer" from the United States and that the fact that Manigault was black and his victims were white would guarantee a guilty verdict from a jury in rural Kentucky. [DE 146, Page ID# 684-85].

The Court will not enter a back and forth between Manigault and Fox about what was said or left unsaid between client and counsel prior to the guilty plea. Rather, the Court will focus its analysis solely on the guilty plea colloquy made by Manigault under oath. After being duly sown and affirming Manigault understood his oath of truthfulness, [DE 125, Page ID# 516-17], the District Court conducted the following plea colloquy:

> THE COURT: I've been told you've entered into a written plea agreement. Is that true?

8

THE DEFENDANT: Yes, ma'am.

THE COURT: Mr. Fox placed before you two documents, one is called a plea agreement and the other is called a sealed supplement. Do you see those documents?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you recognize them?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you read them?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has Mr. Fox explained them to you?

THE DEFENDANT: Yes, ma'am.

THE COURT: **Has anybody tried to force you or coerce you into signing those documents or coming before this Court to plead guilty?**

THE DEFENDANT: **No, ma'am.**

THE COURT: **Are you willing to plead guilty today because you produced and received child pornography?**

THE DEFENDANT: **Yes, ma'am.**

THE COURT: Very well. I want to be sure that both you and I understand the critical terms of your plea agreement. You have your agreement there in front of you, so you can follow along as Ms. Reed summarizes it for us here in court.

 [AUSA Jenna Reed summarizes the critical terms of the plea agreement.]

THE COURT: Thank you. Mr. Manigault, let me direct your attention to paragraph 3 of your plea agreement. Paragraph 3 contains a description of events or a statement of facts that the government says it can prove and your plea agreement says you admit. Have you carefully reviewed the entire contents of paragraph 3 of your plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Does paragraph 3 accurately describe your conduct?

THE DEFENDANT: Yes, ma'am.

9

> THE COURT: In signing the plea agreement and coming here today under oath, do you admit the conduct attributed to you in paragraph 3 of your plea agreement?
>
> THE DEFENDANT: Yes, ma'am.

[*Id*. at Page ID# 519-23 (emphasis added)].  After this, the Court and parties discussed a typographical error in the plea agreement concerning the penalty provisions for the crimes.  The Court, upon clarifying with counsel the correct penalty provisions, requested that Fox "take a moment with [his] client [to discuss the statutory maximum penalties]."  [*Id*. at Page ID# 525].  The Court also stated that it would "note that the penalties were correctly stated in the superceding [sic] indictment."  [*Id*. at Page ID# 525].

> The Court next addressed the sentencing guidelines with Manigault.
>
> THE COURT: All right. Now, have you discussed the sentencing guidelines with Mr. Fox?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: This Court will look to those guidelines to decide where, between the minimum and maximum punishments, to sentence you in this case. The sentencing guidelines require that I consider a number of factors, like the number of images involved in this case, your criminal history, and other factors too numerous for me to sit here and recite. Your lawyer and the United States Attorney have made some recommendations to me as to how they believe that these guidelines should be calculated and considered, and those are in paragraph 5 of your plea agreement. I will take these recommendations very seriously. But it's important that you understand that, as I sit here today, I don't know what your sentence is going to be. Do you understand?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: If your sentence turns out to be more than you think it should be, you will not be permitted to withdraw your plea. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

[*Id*. at Page ID# 525-26].  After discussing other critical provisions of the plea agreement, the Court concluded its colloquy.

>THE COURT: And finally in paragraph 16, it says you understand your plea agreement, that your lawyer has explained it to you, and that you have entered into it voluntarily. Is that true?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: Now, Mr. Manigault, you have a right to a trial. And at a trial, the government would have to prove your guilt beyond a reasonable doubt to a jury. You would have Mr. Fox to represent you throughout the entire proceeding, and you would see and hear all of the evidence the government has against you. Mr. Fox could cross-examine government witnesses and challenge the introduction of evidence. Because the burden remains on the government from beginning to end, you would not be required to call any witnesses or do anything to prove your innocence because it's up to the government to prove you guilty. But if I accept a plea of guilty from you here today, there's not going to be a trial and none of the things that I just described are going to happen. Do you understand that?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: Do you want to have a trial?
>
>THE DEFENDANT: No, ma'am.
>
>THE COURT: With respect to Counts 1 and 3 of the superceding [sic] indictment, do you plead guilty or not guilty?
>
>THE DEFENDANT: Guilty.

[*Id*. at Page ID# 528-29].

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy. *Id*. at 74.

Manigault swore under oath at the plea colloquy that he understood the ramifications of the pleadings guilty, understood the nature of the charges, understood the maximum penalties the United States could seek, understood the Court could impose penalties more severe than the

11

guideline range might suggest, and he made no complaints concerning his counsel. Manigault admitted to the actions he took in commission of the crimes as set forth in the plea agreement. *See Curry v. United States*, 39 F. App'x 993, 994 (6th Cir. 2002) (finding that a defendant's "plea serves as an admission that he committed all of the elements of the crime"). He did all of this while stating plainly that nobody, including Fox, had threatened or promised him anything in exchange for his decision to plead guilty. Manigault's argument that Fox somehow coerced him into pleading guilty and entering the plea agreement is wholly contradicted by his unequivocal statements at his rearraignment. Accordingly, the Court recommends the District Court deny Manigault's motion for § 2255 relief with respect to these arguments.

**D.    REPRESENTATION AT SENTENCING**

Manigault's third and final argument contends that Fox failed to represent him zealously at sentencing. The United States counters that the record demonstrates that Fox zealously defended, even successfully at some points, Manigault at sentencing. The Court agrees with the United States.

First, Manigault complains that Fox failed to notify his family and friends of the sentencing so they could appear and possibly testify in his support. [DE 146, Page ID# 686]. Manigault does not specify the information his family would have provided or how that testimony might have impacted his sentence. Rather, his suggestions are just vague complaints that having his family present would have helped his case. Generally, conclusory statements are insufficient to warrant § 2255 relief. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (acknowledging that conclusory statements are insufficient to warrant § 2255 relief). Thus, if Fox's claims are wholly underdeveloped, then those claims must be dismissed. *See Johnson v. United States*, 457 F. App'x 462, 466-67 (6th Cir. 2012); *United States v. Domenech*, No. 1:06-CR-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013). Mere speculation of

12

some alternative presentation of evidence with no specific argument as to prejudice is not sufficient. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) ("Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*.").

Second, Manigault argues Fox should have objected to the testimony offered at the sentencing hearing by FBI Special Agent Kimberly Kidd ("Kidd"). [DE 146, Page ID# 686]. Kidd provided testimony in support of efforts by the United States concerning a sentencing enhancement under 2G2.2(b)(3)(b). Regardless of the nature of Kidd's testimony, Manigault's objection to that enhancement, as advanced by Fox, **was sustained**. Stated again, Manigault argues Fox was deficient because he made a successful objection. Manigault acknowledges as much, but then vaguely suggests Kidd's testimony somehow swayed the Court in its ultimate sentence. "While the Court did sustain the objection as to the enhancement, this evidence certainly swayed the Court in its ultimate sentencing. . . . It is axiomatic that the Court relied upon this, at least in part, in passing sentence." [*Id*. at Page ID# 687]. Manigault cites to nothing in the record to suggest the Court relied upon, explicitly or implicitly, this evidence in reaching its sentence after sustained the objections. Again, without more, the Court cannot support alternative theories that have no anchor in the record or no detail of the possibility of prejudice. *Hodge*, 579 F.3d at 640.

Third, Manigault objects to several alleged factual misrepresentations made by the United States during their overall argument concerning sentencing. For example, the United States referenced a text from Manigault to Mitchell stating "[r]ape, robbery, and pain is what I'm giving away, by any means, whoever I feel." Manigault argues that Fox should have corrected any suggestion that he was a rapist. Putting aside that the United States did not suggest as much, Fox cannot possibly be expected to correct every single implied fact or suggestion from the United

13

States.  "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.).  Similarly, Manigault argues that Fox failed to object to his receipt of points for touching the toddler when the United States argued as much without any evidentiary proof.  But that argument misconstrues the record.  The United States did not state or argue Manigault touched the toddler; rather, the United States cited Sixth Circuit precedent stating that Manigault "does not have to engage in the touching, and the touching doesn't even have to be captured in the child pornography itself" to receive the points. [DE 129, Page ID# 547].  Manigault raised this very issue, [*Id*. at Page ID# 580-81], but it was rejected by the Court.  Fox cannot be blamed for deficient performance simply because the Court did not adopt the argument.  Next, Manigault contends the United States improperly suggested he and Mitchell were dating.  Again, the Court is unable to discern what legal actions Fox should have taken in response to this allegation and what prejudice resulted from this alleged false statement.  *See Johnson*, 457 F. App'x at 466-67.

The remainder of Manigault's arguments about Fox's performance at sentencing seem to be another veiled protest that he regrets pleading guilty.  "During the sentencing hearing, the Defendant's ill-advised execution of a plea agreement sealed his fate as to the sexual contact enhancement." [DE 146, Page ID# 686].  He complains that some of the evidence of his guilt was problematic, something that has nothing to do with his sentencing.  [DE 146, Page ID# 687 (arguing the metadata from some of the child sexual abuse materials did not align with the alleged victims)].  He claims that "the cumulative effect of all of these deficiencies did result in prejudice

. . . e.g., and ill-advised guilty plea." [DE 159, Page ID# 737]. Here, Manigault's argument becomes circular. In other words, Fox's failure to zealously represent Manigault at sentencing is what led to Manigault pleading guilty some months earlier. Barring a time machine, these arguments do not hold up.

E. **REQUEST FOR HEARING**

At the conclusion of his petition, Manigault requests a hearing "so that the Defendant and undersigned Counsel can present evidence to the Court supporting his claims herein." [DE 146, Page ID# 690].

The Court must conduct an evidentiary hearing on Manigault's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also* Rule 8(a) of the Rules Governing Section 2255 Cases in the United States District Courts (directing the Court to examine the filings and record "to determine whether an evidentiary hearing is warranted"). The Court must hold a hearing where the petitioner raises a factual dispute underlying her claims, and "[t]he burden for establishing an entitlement to an evidentiary hearing is relatively light[.]" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). However, "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact[,]" no evidentiary hearing is required. *Id.*

Here, the Court wholly relied upon the record to reach its recommendation, including the plea agreement, rearraignment transcript, and the sentencing transcript. The Court did not entertain any dispute of fact between Manigault and Fox that occurred outside of the record. Accordingly, the Court does not find a hearing is necessary.

### III.  CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Manigault's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Manigault's three arguments in support of his petition are all generally refuted by the record.  First, a thorough examination of the evidence and sworn testimony before the Court show there was no meritorious defense for Manigault being ignored by Fox.  Second, Manigault's guilty plea was knowing and voluntary as supported by Manigault's sworn statements to the Court.  And finally, Fox took every step (including successful objections) to zealously represent Manigault at sentencing.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

16

## IV.     CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS**:

1) The District Court **DENY**, with prejudice, Manigault's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 146]; and

2) The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 22nd day of December, 2022.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY