UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Crim. No. 7:18-cr-20-KKC-MAS-2 |
| | Civ. No. 7:22-cv-86-KKC-MAS |
| **Plaintiff/Respondent,** | |
| v. | **OPINION AND ORDER** |
| **JONATHAN EDWARD MANIGAULT,** | |
| **Defendant/Movant.** | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on Defendant Jonathan Manigault's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (DE 146.) The magistrate judge recommended the Court deny the motion. Manigault filed timely objections to the magistrate judge's recommendation. (DE 161, 167.) The Court has reviewed the recommendation and agrees with its analysis, but now turns to address Manigault's objections.

Manigault was charged with three counts: Count 1, alleging that Manigault and co-defendant Christina Brook Mitchell ("Mitchell") persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing child sexual abuse materials in violation of 18 U.S.C. § 2251(a); and Counts 3 and 6, alleging that Manigault knowingly received child sexual abuse materials in

1

violation of 18 U.S.C. § 2252(a)(2). (DE 41.) Manigault pleaded guilty to Counts 1 and 3. (DE 54.) He was sentenced to 480 months of imprisonment. (DE 116.)

Manigault objects to the magistrate judge's findings that (1) Manigault's attorney did not err in not presenting certain defenses to the production charge, (2) the plea agreement was entered into knowingly and voluntarily, (3) Manigault should be denied an evidentiary hearing, and (4) Manigault should be denied a certificate of appealability.

The Court analyzes Manigault's objections in turn.

## I. Analysis of Manigault's Claimed Defenses to the Production Charge

Manigault's primary ineffectiveness of counsel claim is that his attorney, Michael B. Fox ("Fox"), did not advise him of viable defenses to the production charge. Manigault also objects to several statements the magistrate judge made in reaching his conclusion that there were no viable defenses for Fox to present. Specifically, he objects to the magistrate's statements that: (1) Manigault did not reference specific actions or omissions of his counsel; (2) that the record is replete with evidence that Manigault coerced Mitchell into producing the photos; and (3) that Manigault admitted to aiding and abetting Mitchell (DE 161.) Though these statements by the magistrate judge may not have been entirely accurate, the magistrate's ultimate finding that Fox did not err because there were no viable defenses remains valid.

Manigault claims that the following defenses to the production charge existed: (1) he was not in Kentucky at the time of the production, and he did not coerce Mitchell, (2) the electronic messenger evidence may not have been admissible at trial,

and (3) certain witnesses existed that could have called into question whether he sent the messages at issue.

Manigault argues that he was not in Kentucky and therefore could not have directly produced the images. He also argues that he did not coerce Mitchell into taking the photographs. Even if these are true, Manigault's admitted conduct still renders him guilty of the production charge under 18 U.S.C. § 2.

18 U.S.C. § 2 states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission," or "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(a) & (b). Manigault's Facebook messages to Mitchell told her to "walk in with your phone first . . . turn the camera so I can see you take her panties off . . . get pictures please." (DE 55 at ¶ 3(a).) There is no doubt that sending these messages qualifies as an affirmative act in furtherance of counseling, inducing, or procuring the commission of the production of child pornography. Accordingly, it is irrelevant to his charge that he did not coerce Mitchell into taking the images. Neither is it relevant that he did not expressly admit to aiding and abetting Mitchell. He did admit to sending the messages, which renders him culpable as a principal under 18 U.S.C. § 2. Therefore, this was not a viable defense for Fox to present.

Next, Manigault attacks the quality of the electronic messenger evidence as "inherently unreliable" and faults his attorney for not attacking the admissibility of such evidence as a defense. (DE 161 at p. 4.) Under the standard for ineffective

3

assistance of counsel claims laid out in *Strickland v. Washington,* the Court must allow a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. 668, 689 (1984). Manigault cites no laws calling into question the admissibility of the electronic messages, and the Court has no reason to believe that the messages would not have been admitted at trial. Therefore, Fox's decision to not advise Manigault that the messages may not be admissible in court is not grounds for a *Strickland* violation. *See Bailey v. Smith*, 492 F. App'x 619, 627 (6th Cir. 2012) ("[N]either logic nor precedent indicate that objecting without cause amounts to ineffective advocacy.").

Manigault also argues that Fox rendered ineffective assistance by not investigating certain witnesses. (DE 167.) He has attached letters to his supplemental objections to the report and recommendation that claim another person had been using his phone to send messages. (DE 167-1.) Manigault argues that if Fox had made reasonable efforts, he would have found the witnesses who authored the letters and would have been able to form a defense. (DE 167.)

Criminal counsel has the duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. *Strickland*, 466 U.S. at 691. The reasonableness of counsel's investigation usually depends on information supplied by the defendant. *Id.* at 695-96. Manigault has admitted to sending the electronic messages at issue multiple times in the proceedings. (DE 125, 129). With his admissions of guilt, Fox made a reasonable decision to not investigate certain witnesses. There is also no evidence that Manigault provided Fox with

information to lead to these witnesses. Given the high deference the Court must give to Fox's decisions, his actions with respect to investigating witnesses are not grounds for a finding of ineffective assistance of counsel.

Accordingly, the Court agrees with the magistrate judge that Fox did not err by ignoring any viable defenses.

**II.     The Finding that Manigault's Plea was Knowing and Voluntary**

Manigualt next objects to the magistrate judge's finding that he was not coerced into accepting the plea agreement. Manigault alleges that his attorney told him that if he accepted the plea agreement, he would receive a maximum sentence of fifteen years. (DE 167.) Instead, he received a sentence of 480 months. (DE 129.)

The magistrate judge found that the plea colloquy foreclosed any claim of prejudice resulting from the alleged promises by his attorney. (DE 160.) As the magistrate noted, "'the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy. *Id.* at 74.

Manigault's rearraignment proceeding shows that Manigault entered the plea agreement knowingly and voluntarily. (DE 125.) The following plea colloquy confirms that Manigault was aware of the possible sentence and still chose to plead guilty:

5

> THE COURT: Paragraph 4 of your plea agreement sets forth the statutory punishment that applies in your case. As to Count 1, it is imprisonment for not less than 15 years and not more than 30 years in prison. . . As to Count 3, the statutory punishment is not more than 20 years[1]. . . Do you understand that that is the statutory punishment that applies in your case?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: This Court will look to those guidelines to decide where, between the minimum and maximum punishments, to sentence you in this case. . . Do you understand?
>
> THE DEFENDANT: Yes, ma'am

(DE 125, Page ID# 523-525.) Manigault was explicitly informed of the sentencing guidelines and told that his sentence could be as high as 30 years for Count 1 and 20 years for Count 3. Manigault confirmed that he understood this before he pleaded guilty. He cannot claim now that he relied on his attorney's promise that he would receive no more than 15 years if he accepted the guilty plea.

Further, the plea colloquy shows that Manigault was not coerced into accepting the guilty plea:

> THE COURT: Has anybody tried to force you or coerce you into signing [the plea documents] or coming before this Court to plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: And finally in paragraph 16 [of your plea agreement], it says you understand your plea agreement, that your lawyer has explained it to you, and that you have entered into it voluntarily. Is that true?
>
> THE DEFENDANT: Yes, ma'am.

---

[1] The Court later clarified at the sentencing hearing that the statutory punishment for Count 3 was a minimum of 5 years and not more than 20 years of imprisonment. Manigault stated that he understood the penalty. (DE 125, Page ID# 524-25.)

(DE 125, Page ID# 519-528.) These statements made under oath "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Manigault cites no law to the contrary. Manigault repeatedly swore that he understood his possible sentence and that he was entering the plea voluntarily. Accordingly, Manigault's objection to the finding that he was not coerced into the plea agreement is denied.

### III.  Denial of a Hearing

Next, Manigault objects to the magistrate judge's denial of a hearing. The magistrate judge found that there was no need for an evidentiary hearing because the Court relied wholly on the existing record to reach its recommendation. (DE 160 at Page ID# 754.) Manigault contends that a factual dispute exists about whether Manigault actually knew what sentence might be imposed. (DE 167 at Page ID# 779.) He requests a hearing "so that the Court can undertake a detailed analysis of the back and forth between Manigault and Fox about what was said or left unsaid between client and counsel prior to the guilty plea." *Id.*

The Court must conduct an evidentiary hearing on Manigault's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also* Rule 8(a) of the Rules Governing Section 2255 Cases in the United States District Courts (directing the Court to examine the filings and record "to determine whether an evidentiary hearing is warranted"). The Court must hold a hearing where the petitioner raises a factual dispute underlying his claims, and "[t]he burden for establishing an entitlement to an evidentiary hearing is relatively light[.]" *Martin v. United States*, 889 F.3d 827,

7

832 (6th Cir. 2018). However, "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact[,]" no evidentiary hearing is required. *Id.*

In this case, the record shows that Manigault knew the maximum penalty when he entered his guilty plea. The above cited plea colloquy proves that Manigault was told the maximum penalty for his charged offenses at the rearraignment and acknowledged that he understood the maximum penalty that applied to his case. (DE 125 at Page ID# 523.) Regardless of what was said between Manigault and Fox prior to the guilty plea, the record directly contradicts the contention that Manigault did not know the maximum sentence he was facing. Therefore, the Court agrees with the magistrate judge and does not find it necessary to hold a hearing.

## IV. Denial of Appealability

Manigault also objects to the magistrate judge's recommendation that a certificate of appealability be denied. A certificate of appealability shall be issued only if a defendant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should be issued when the petitioner shows, at least, that jurists of reason would find it debatable whether the

8

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Manigault only specifically objects to the finding that reasonable jurists would not debate that Fox did not ignore a meritorious defense. As discussed herein, the Court agrees with the magistrate judge that Manigault did not have any viable defenses. The record fully supports that Manigault's admitted actions qualify as aiding and abetting Mitchell in the production of child pornography. Further, reasonable jurists would not find that Fox rendered ineffective assistance of counsel by not presenting the possibility of authentication obstacles in admitting the electronic messenger evidence at trial. Therefore, since the Court agrees that reasonable jurists would not disagree on the invalidity of Manigault's proffered defenses and Fox's decision not to pursue them, the Court will deny a certificate of appealability.

> For the reasons discussed above, the Court hereby ORDERS as follows:
> 
> (1) The Report and Recommendation (DE 160) is ADOPTED as the Court's opinion;
> 
> (2) The District Court DENIES, with prejudice, Manigault's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 (DE 146); and
> 
> (3) A certificate of appealability as to all issues is DENIED.

This 12th day of October, 2023.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY